**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH SPRIESCH, | ) | |
| | ) | Case No. 17 C 1952 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Sara L. Ellis |
| | ) | |
| CITY OF CHICAGO, a municipal | ) | Magistrate Judge M. David Weisman |
| Corporation, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS COUNTS VI AND VIII AND
PARTIALLY DISMISS COUNTS I, II, III, AND V OF PLAINTIFF'S COMPLAINT**

Defendant City of Chicago ("the City") hereby moves the Court to dismiss Counts VI and VIII of Plaintiff's Complaint, and to Partially Dismiss Counts I, II, III, and V, under Federal Rule of Civil Procedure 12(b)(6). In support, it states as follows:

**INTRODUCTION AND PROCEDURAL HISTORY**

Plaintiff Sarah Spriesch, formerly known as Sarah Murphy, ("Plaintiff"), filed a nine-count Complaint against the City on February 14, 2017. Plaintiff alleges the City violated the Illinois Human Rights Act ("IHRA"), (*Count I* – Pregnancy Discrimination, *Count II* – Gender Discrimination, *Count III* – failure to provide reasonable accommodation for pregnancy, *Count IV* – retaliation); Title VII of the Civil Rights Act of 1964 ("Title VII"), (*Count V* – Sex (Pregnancy) Disparate Treatment, *Count VI* – Sex (Pregnancy) Disparate Impact, *Count VII* – Retaliation), the Illinois Nursing Mothers in the Workplace Act ("INMWA"), (*Count VIII*), and the Fair Labor Standards Act ("FLSA"), (*Count IX* – Retaliation).

Simultaneously with this Motion, the City is answering portions of the Complaint. However, many of Plaintiff's allegations fail to state a claim upon which relief can be granted, and should be dismissed. This includes Counts VI and VIII in their entirety, and any allegations, included in Counts I, II, III and V, based on Plaintiff's claims regarding going on paid leave in 2014, or the

alleged differences between off-duty and on-duty injury leaves. The paragraphs primarily at issue in this Motion include ¶¶1-2, 11-28, 91, 94, 97, 103, 105-109, and 113-15.

## FACTUAL ALLEGATIONS

Plaintiff is a Paramedic-in-Charge at the Chicago Fire Department. ¶9. She began her employment as a Fire Paramedic in October 2012. *Id.* In June 2014, she learned she was pregnant, and went on paid leave. ¶¶11, 25. Plaintiff alleges she wished to keep working. ¶14. She stayed on that leave of absence for 308 days, and was paid the entire time. ¶27.

Plaintiff complains that her 308-day paid leave was treated as an "off-duty" injury, rather than an "on-duty" one. ¶¶22-28. Plaintiff complains that CFD employees only get 12 consecutive months of paid leave for off-duty injuries within any 24 month period, while they can have up to 12 consecutive months for each on-duty injury, regardless of whether the employee previously took other leave. ¶25. However, Plaintiff does not allege that she herself ever ran out of paid leave days. She only claims she *could have* had fewer days of paid leave *if* she had been injured in the near future. ¶28 (emphasis added).

Plaintiff returned to duty on April 8, 2015. ¶35. In a series of allegations which are not at issue in this motion, Plaintiff alleges the City did not accommodate her need to express breast milk during retraining, and that she was retaliated against. ¶¶34-63; 77-89. Thereafter, between April and October 2015, Plaintiff alleges the CFD failed to provide accommodations for her to express breast milk. ¶¶70-76.

In April and May, Plaintiff complains she was detailed to some firehouses without private sleeping quarters for a Fire Paramedic, and also alleges she could not use any of the other private non-bathroom space. ¶¶70-72. On June 1, 2015, the CFD promoted Plaintiff to Paramedic in Charge. ¶73. Plaintiff complains that as a newly promoted Paramedic in Charge, she was in the relief pool from June until October. *Id.* She alleges that during this period, some of her assignments were

to firehouses allegedly lacking acceptable places to express breast milk. *Id.* Plaintiff also alleges there were available slots on ambulance with facilities satisfactory to her, and alleges CPD detailed other paramedics to specific ambulances or other assignments to address personal or other concerns. ¶¶73,75.

## LEGAL STANDARD

A party may assert by motion that all or part of a complaint fails to assert a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint satisfies this standard when it offers sufficient factual content to allow the court to infer that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Mere legal conclusions are insufficient. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). Where the facts establish an affirmative defense or otherwise undermine the claims, the court may grant a motion to dismiss. *Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); *Ennenga v. Starns*, 677 F.3d 766, 776 (7th Cir. 2012).

## ARGUMENT

## I.   PLAINTIFF'S ALLEGATIONS REGARDING AN ALLEGED FORCED LEAVE OF ABSENCE, INCLUDING IN COUNTS V, AND VI,  ARE UNTIMELY

### a.   Plaintiff did not file a timely charge regarding going on leave in 2014

The first part of Plaintiff's Complaint is focused on allegations that she was forced on leave in June 2014. *See* Complaint, ¶¶1, 11-21. (*See also* ¶¶22-28, addressed in Section II, *infra*). Plaintiff appears to seek relief for allegedly being forced on leave in Count V (Title VII – Disparate Treatment), ¶103, and Count VI (Title VII – Disparate Impact), ¶106.

Plaintiff cannot seek relief for allegedly being forced on leave in June 2014 because she failed to file a timely charge of discrimination. Plaintiff fails to attach her Charge to her Complaint, but she states that she filed it on October 5, 2015. ¶6. Plaintiff does not specify which date in June 2014 she

went on leave, but even giving Plaintiff the most favorable date in June – June 30th – there are 462 days between the date she was allegedly forced on a paid leave of absence and October 5, 2015. Put another way, 300 days prior to her charge is December 9, 2014, and 180 days before her charge is April 8, 2015 – the day she returned to work.

A Title VII plaintiff must first file a charge with the EEOC within a specified period (in Illinois, 300 days) from when "the alleged unlawful employment practice occurred." 42 U.S.C. §2000e-5(e)(1). Under the IHRA, the deadline is 180 days "after the date that a civil rights violation allegedly has been committed." 775 ILCS 5/7A-102(A)(1). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 111 (2002). Each discrete act has its own clock, and discrete acts within the statutory period do not make timely acts outside the period. *Id.* at 111-13.

The decision to put an employee on leave is a discrete event, not a continuing violation. Any claim that the leave violated Title VII or another law accrues at that time. *See, e.g., Barrett v. Illinois Dep't of Corr.,* 803 F.3d 893, 899 (7th Cir. 2015) (under FMLA, denial of leave was a discrete act, not a continuing violation); *Licari v. City of Chicago,* 298 F.3d 664, 668 (7th Cir. 2002) (§1983 claim accrued when employee was placed on unpaid leave, and was therefore time-barred); *Johnson v. City of Chicago,* No. 13-CV-04098, 2015 WL 1918161, at *3 (N.D. Ill. Apr. 28, 2015) ("Accordingly, the 300–day period began to run on the date Johnson claims he was informed that he would be forced to take a leave of absence"); *Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chicago,* No. 11 C 6920, 2012 WL 1802148, at *7 (N.D. Ill. May 17, 2012) (denial of vacation and FMLA leave was discrete; citing other cases); *Gusciara v. Lustig,* 346 Ill. App. 3d 1012, 1018 (2nd Dist. 2004) (IHRA often follows Title VII, including *Morgan's* rules about discrete action discussed in the prior paragraph,); *see also Teague v. NW. Mem'l Hosp.,* 492 F. App'x 680, 684 (7th Cir. 2012) (refusal to

4

accommodate disability is a discrete act; citing reported cases from 1st, 10th, and D.C. Circuits). Thus, Plaintiff had to file her charge within 300/180 days of June 2014. Even if she had gone on leave on June 30, 2014, 300 days would make her deadline to file a charge April 26, 2015 – about six months before she filed.

Plaintiff cannot evade the discrete act of being placed on leave by arguing she continued to be on leave within the Title VII limitations period. A discrete act, such as a termination, can often have ongoing adverse effects, but it is well established this does not toll the statute of limitations. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("It is simply insufficient for [Plaintiff] to allege that his termination 'gives present effect to the past illegal act and therefore perpetuates the consequences of forbidden discrimination.'"); *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 560 (1977) ("a challenge to a neutral system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer."); *Dasgupta v. Univ. of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir. 1997) ("an untimely Title VII suit cannot be revived by pointing to effects within the limitations period of unlawful acts that occurred earlier.") Similarly, "failure to remedy an unlawful employment action is not a discrete actionable violation." *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239–40 (7th Cir. 2004).

Finally, Plaintiff was on fully paid leave, which is not normally an adverse action. Pregnancy discrimination is within the protections of sex discrimination, and the same legal analysis applies. *Green v. Sanford-Brown College, Inc.,* 38 F.Supp.3d 908, 911 (N.D.Ill. 2014); *see also Hall v. Nalco Co.,* 534 F.3d 644, 647 (7th Cir. 2008) ("The PDA [Pregnancy Discrimination Act] created no new rights or remedies, but clarified the scope of Title VII,"). To state a disparate treatment claim, a Plaintiff must allege a "materially adverse action". *Nichols v. SIU-Edwardsville,* 510 F.3d 772, 780 (7th Cir. 2007). "A materially adverse employment action is something 'more disruptive than a mere inconvenience or

an alteration of job responsibilities.'" *Id.*; *Rhodes v. Ill. Dep't of Transp.,* 359 F.3d 498, 504 (7th Cir. 2004). Paid leave is not normally a materially adverse action for discrimination purposes, particularly when Plaintiff would not have been able to use the leave for other purposes (in contrast to vacation days). *See, e.g., Nichols,* 510 F.3d at 786-87 (three months of paid administrative leave was not adverse action). Therefore, even if Plaintiff's claim was timely filed (it was not), she fails to state adverse action.

For these reasons, the portions of Counts V, and VI based on Plaintiff going on a leave of absence in 2014 should be dismissed, and the factual allegations including these facts found in ¶¶1 and 11-21, should be stricken.

### b. Plaintiff cannot retroactively hold the City liable for conduct prior to the 2015 amendment of the IHRA

On January 1, 2015 the IHRA was amended to include reasonable accommodation and other additional protections for pregnancy. The IHRA's provisions regarding reasonable accommodation of pregnancy were added *via* Public Act 98-1050. 2014 Ill. Legis. Serv. P.A. 98-1050 (H.B. 8). PA 98-1050 substantially revised the IHRA's law regarding pregnancy discrimination and added, for the first time, the provisions regarding reasonable accommodation, with an effective date of January 1, 2015. *Id.* Nowhere does PA 98-1050 say that it is retroactive.

To the extent Plaintiff seeks to rely on events in 2014 in Counts I, II, or III, such claims are barred because they occurred prior to January 1, 2015.

Illinois uses the *Landgraf* test for retroactivity, which has a strong presumption against retroactive liability. *Hayashi v. Ill. Dep't of Fin. and Pr. Reg.,* 2014 IL 116023 at ¶23 (2014); *citing Landgraf v. USI Firm Products,* 511 U.S. 244, 280 (1994) (declining to retroactively apply statute redefining Title VII damages). Under *Landgraf,* a statute is "retroactive" if "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* "If applying the statute would have a retroactive

6

impact, then the court must presume that the legislature did not intend that it be so applied." *Id.; see also Board of Trustees of Comm. College Dist. No. 508 v. Human Rights Comn,* 88 Ill.2d 22, 35 (1981) (initial enactment of the IHRA was not retroactive). The amendment to the IHRA does not clearly indicate a legislative intent of retroactivity, and would serve to create new liability. Therefore, the current IHRA should not be retroactively applied to events before January 1, 2015. *See, e.g., AT&T Corp. v. Hulteen,* 556 U.S. 701, 713 (2009) (declining to construe Pregnancy Discrimination Act to retroactively render conduct illegal).

## II. PLAINTIFF'S ALLEGATIONS OF HAVING HER LEAVE TREATED LESS FAVORABLY THAN ON-DUTY INJURY, INCLUDED IN COUNTS I, II, III, V, AND VI, IS UNTIMELY AND FAILS TO PLEAD INJURY

Plaintiff also attempts to bring her leave of absence into this suit by alleging her 308-day leave was treated as an off-duty injury, which she alleges is less favorable than on-duty injuries. These allegations are found throughout the Complaint, including in ¶¶22-28, and are a basis for seeking relief in at least Count I, ¶91, Count II, ¶94, Count III, ¶97, Count V, ¶103 and Count VI, ¶106. Not only are these allegations untimely, but they fail to allege an injury.

### a. Plaintiff's allegations about having her paid leave treated as off-duty injury are untimely, because she went on leave in June 2014

As discussed in Section I, *supra*, Plaintiff went on a paid leave for her pregnancy in June 2014, which was a discrete event. Likely aware of her timeliness problem, Plaintiff claims her leave during her 308-day pregnancy leave was treated as an off-duty injury "upon her return to work." However, this is simply an attempt to base a claim on the lingering effect of a decision that was made in 2014. Again, a discrimination claim cannot be based on such after-effects of otherwise-untimely events. *Delaware State Coll.*, 449 U.S. at 258; *United Air Lines*, 431 U.S. at 560; *Dasgupta*, 121 F.3d at 1140; *Stepney*, 392 F.3d at 239–40. Plaintiff's IHRA claims fair no better as they are based on events that occurred in June 2014, six months prior to the enactment of PA 98-1050.

      **b.**     **Plaintiff has failed to allege any injury due to any alleged difference between on-duty and off-duty paid leave, and therefore lacks standing and has failed to state a claim based thereon**

Even setting aside the untimeliness of her claim about her leave of absence, Plaintiff's allegations that her leave was treated less favorably than on-the-job injuries fails to state a claim because she has not alleged an injury therefrom. Plaintiff cannot bring suit about any alleged difference between CFD's off-duty and on-duty injury leave policies because Plaintiff alleges a distinction without a difference.

Plaintiff admits the City of Chicago paid her full salary for the entire 308 days she was on leave for her pregnancy. ¶¶ 25, 27. She complains, however, that:

> City policies cap the total amount of paid off-duty injury leave time that CFD employees are entitled to take at twelve (12) cumulative months within any twenty-four month period. By contrast, CFD employees may take up to twelve (12) consecutive months for each on-the-job injury or illness that requires leave, regardless of how much leave they have taken in the past.

¶25. In other words, CFD employees who suffer off-duty injuries get 1 full year of paid leave in any 2 year period, a restriction not present for employees who suffer consecutive on-duty injuries.

These are purely hypothetical allegations. Plaintiff does not allege she was injured subsequent to her pregnancy leave, in the relevant period, let alone that she ran out of paid leave within a 24 month period, or that the City ever forced her onto unpaid leave. None of that happened. The City's practices in such a scenario, and its application to an employee whose leave was related to pregnancy, were not put to the test.

Instead, Plaintiff theorizes that "she has significantly fewer days of leave available to her should she suffer an off-duty injury or illness in the near future." ¶28. However, the allegation that Plaintiff may run out of paid leave fails under simple mathematical scrutiny. Plaintiff filed this suit on February 14, 2017. However, since Plaintiff went on leave in June 2014, the twenty-four month period at issue expired in June 2016 – eight months before she filed suit. Therefore, in June 2016 it

became *impossible* for Plaintiff to run out of days due to the leave taken in 2014-15. Even if, hypothetically, Plaintiff had gone on off-duty injury leave on June 4, 2016 (she did not), she could have stayed on off-duty injury leave for the next 365 days, regardless of her whether she had taken leave in 2014-15, pursuant to the policy as Plaintiff describes.

Lawsuits require an actual controversy, and a plaintiff must be affected by a policy in order to bring suit. Plaintiff's failure to do so invokes the constitutional issue of standing, as well as a failure to state a claim under either a disparate impact or disparate treatment rubric. "In order for an individual plaintiff to have constitutional standing to bring a Title VII action, he must show that he was personally injured by the defendant's alleged discrimination and that his injury will likely be redressed by the requested relief." *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996). Since Plaintiff has not been affected by the alleged difference between the amount of paid leave CFD provides to its employees depending on whether injury is off-duty or on-duty, she lacks standing to bring a claim on this basis. *See, e.g., Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 167 (1972) (allegedly racial club policies could not be challenged by person who had not sought membership); *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 821 (7th Cir. 2014) (group could not challenge tax exemption on religious affiliation grounds without being personally denied the exemption); *Lujon v. Defenders of Wildlife*, 504 U.S. 555, (1992) ("the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured.").[1]

Moreover, in order to bring either a disparate impact or disparate treatment claim, Plaintiff would have to causally link an alleged injury to the amount of paid leave offered for off-duty or on-duty injuries, which she has not done. *See, e.g., Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir.

---

[1] With respect to Plaintiff's IHRA claims, Counts I-III, "standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2666 (2013). Moreover, even under Illinois law, the analysis is much the same. There, "standing is shown by demonstrating some injury to a legally cognizable interest," which "whether actual or threatened, must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of the relief requested." *Village of Chatham v. County of Sangamon*, 216 Ill.2d 402, 420 (2005).

2014); *Farrell v. Butler University,* 421 F.3d 609, 617 ( 7th Cir. 2005); *Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1255 (7th Cir. 1990); *Carpenter v. Bd. of Regents of Univ. of Wisc. System,* 728 F.2d 911 (7th Cir. 1984); *Godfrey v. City of Chicago*, 973 F. Supp. 2d 883, 894 (N.D. Ill. 2013).

For these reasons, the portions of Counts I, II, III, V, and VI based on the difference between off-duty and on-duty leave should be dismissed, and the factual allegations raising these claims, included in ¶¶1 and 22-28, should be stricken.

## III. PLAINTIFF FAILS TO PLEAD A POLICY REGARDING SHIFT ASSIGNMENTS THAT HAS A DISPARATE IMPACT ON LACTATING EMPLOYEES

Plaintiff's only other proposed ground for her disparate impact claim is that "As described above… the City's method for detailing shift assignments for its employees, including those in the relief pool, had a discriminatory disparate impact on lactating female CFD employees." ¶107. However, Plaintiff has not pled: a) a specific City policy about how it assigns shifts; or b) that said policy caused an impermissible disparate impact on lactating employees. Therefore, this allegation fails to support Count VI. Based upon the issues discussed in Section II, *supra,* and this Section, neither ¶106 nor ¶107 support a disparate impact claim and Count VI should be dismissed in its entirety.

For disparate impact claims, a plaintiff must establish that a particular employment practice causes a disparate impact on a member of a protected class. 42 USC § 2000e-2(k); *Puffer v. Allstate Ins. Co.,* 675 F.3d 709, 717 (7th Cir. 2012). "To satisfy this burden the plaintiff is 'responsible for isolating and identifying the specific practices that are allegedly responsible for any observed statistical disparities.'" *Puffer,* 675 F.3d at 717; *quoting Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994 (1988). "Notably, 'it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Puffer,* 675 F.3d at 717; *quoting Smith v. City of Jackson,* 544 U.S. 228, 241 (2005). "Isolated and singular incidents generally are

insufficient to constitute a specific employment practice." *Bennett v. Roberts,* 295 F.3d 687, 698 (7th Cir. 2002).

In pleading a disparate impact case, Plaintiffs must provide factual allegations of such a specific policy. "'Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice' to state a plausible claim for relief." *Adams v. City of Indianapolis,* 742 F.3d 720, 733 (7th Cir. 2014) (affirming 12(b)(6) dismissal of disparate impact claim for insufficient pleading); *quoting Iqbal,* 556 U.S. at 678. Moreover, disparate impact "is a complex discrimination claim, and we have observed that under *Iqbal* and *Twombly,* 'the required level of factual specificity rises with the complexity of the claim.'" *Adams,* 742 F.3d at 733; *quoting McCauley v. City of Chicago,* 671 F.3d 611, 616-17 (7th Cir. 2011); *see also McReynolds v. Merrill Lynch & Co., Inc.,* 694 F.3d 873, 887 (7th Cir. 2012). The pleading should have some factual content tending show that the policy at issue caused a relevant and statistically significant disparity. *Adams,* 742 F.3d at 733.

Such level of detail is important for any disparate impact claim, but additionally so in a case like this, where the plaintiff targets policies limiting the reassignment of employees. Such policies do not necessarily run afoul of Title VII or other laws, even if there is some impact on the class or if the employee has a right to an accommodation. For instance, under the ADA "an employer may be obligated to reassign a disabled employee, but only to vacant positions; an employer is not required to 'bump' other employees to create a vacancy so as to be able to reassign the disabled employee. [Citation.] Nor is an employer obligated to create a 'new' position for the disabled employee." *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996). Also, Title VII provides a defense to disparate impact cases for "bona fide seniority" systems, which could come into play for certain CFD policies. 42 U.S.C. § 2000e-2(h); *see, e.g., Kennedy v. Chemical Waste Mngmt, Inc.,* 79 F.3d 49, 52 (7th Cir. 1996). Before proceeding to discovery on a complex disparate impact claim, Defendant has a right to know the policies at issue, especially if Plaintiff's theory is legally flawed from the start.

11

Plaintiff is clearly capable of pleading facts about the CFD policies with which she takes issue. For instance, she alleged factual differences between paid on-duty and off-duty injury leave, ¶25, and she attached a copy of the CFD's medical policy. *Complaint*, Exhibit 3. Plaintiff's failure to point to any City policy about shift assignments with an impermissible impact forecloses her ability to state a disparate impact claim.

Plaintiff's allegations about CFD shift assignment policies fail to meet the necessary pleading standard. Plaintiff alleges that, after her 308-day leave of absence, she went to the relief pool, where she stayed between April and October 2015 (first as a Fire Paramedic, then as a Paramedic in Charge). ¶¶70-76. During this time, she claims the CFD failed to assign her to ambulances operating out of fire stations that had adequate private, non-bathroom facilities for her to express breast milk. *Id.* However, she does not describe the specific practice about shift assignments with which she takes issue. It is not enough to "point to a generalized policy." *Puffer,* 675 F.3d at 717. Depending on the policy at issue, the City may have different defenses or bases for dismissal under 42 U.S.C. § 2000e-2(h), *Gile,* 95 F.3d at 499, or other doctrines.[2] Plaintiff must be specific about the policy she seeks to litigate.

Nor does Plaintiff allege facts explaining why the policy at issue (whichever it is) somehow had the effect of disproportionately impacting lactating women. If Plaintiff seeks to base her claim on shift assignment policies, then she must provide "factual content" that the complained-of policy is what caused the complained-of disparate impact. *Adams,* 742 F.3d at 733. Plaintiff neither invokes statistical data nor any other evidence to suggest CFD's facially neutral shift assignment policies somehow caused lactating women to be adversely affected, let alone in a way that is not permissible under Title VII or other laws.

---

[2] For instance, if Plaintiff sought to litigate the loss of her original assignment after a leave of absence, this would raise timeliness issues, as the after-effect of a 2014 decision. *Delaware State Coll.,* 449 U.S. at 258; *United Air Lines,* 431 U.S. at 560; *Dasgupta,* 121 F.3d at 1140; *Stepney,* 392 F.3d at 239–40.

Quite to the contrary, Plaintiff claims CFD simply refused to detail her to ambulances that could accommodate her need to pump (¶¶70-76) even though it allegedly "routinely considers other personal needs in allocating shift assignments," ¶75, and even though multiple alleged ambulances "had open spots and all were located at firehouses that would have offered [Plaintiff] access to a clean, private, non-bathroom space," ¶73. These allegations are based solely on Plaintiff's alleged experience, and such "isolated and singular incidents generally are insufficient to constitute a specific employment practice." *Bennett,* 295 F.3d at 698. Moreover, Plaintiff's allegations that CFD "routinely considers other personal needs" indicates she is *not* claiming her assignments were the result of the application of a facially neutral policy, but rather that the City's policies have made room to accommodate others, but it chose not to accommodate her. Plaintiff's allegations that CFD simply refused to accommodate her do not state a disparate impact claim. Accordingly, Count VI should be dismissed in its entirety.

## IV. PLAINTIFF CANNOT BRING A CLAIM FOR DAMAGES UNDER THE ILLINOIS NURSING MOTHERS IN THE WORKPLACE ACT

### a. The Illinois Nursing Mothers in the Workplace Act does not provide a private right of action

Count VIII is brought under the Illinois Nursing Mothers in the Workplace Act ("INMWA"), 820 ILCS 260/1, *et seq.* The INMWA does not expressly provide a private right of action, and the undersigned is not aware of any reported Illinois decision finding that the INMWA implicitly provides one. *Compare to Tolene v. T-Mobile, USA, Inc.*, 178 F. Supp. 3d 674, 685, n. 10 (N.D. Ill. 2016) (noting the parties disputed the issue, but finding it unnecessary to resolve); *Lara-Woodcock v. United Air Lines,* 999 F.Supp.2d 1027 (N.D. Ill. 2013) (INMWA discussed only *via* retaliatory discharge tort); *see also* 740 ILCS 137/15 (providing express private right of action in Illinois Right to Breastfeed Act). Nor is a private right of action necessary, because the INMWA's provisions are duplicative of other available laws, such as the IHRA. *See Fisher v. Lexington Health Care, Inc.,* 188

Ill.2d 455, 460 (1999) (4-part test for implying remedy); *Kagan v. Waldheim Cemetery Co,* 2016 IL App (1ˢᵗ) 131274 at ¶¶47-50 (existence of other statutory remedies made private right of action unnecessary); *Bonnstetter v. City of Chicago,* 2014 WL 3687539 at *6 (N.D. Ill. July 24, 2014) (declining to find private cause of action for Illinois constitutional civil rights violations, due to existence of IHRA). Therefore, this Court should decline to construe the INMWA as an independent source of private relief.

       **b.    Plaintiff cannot bring a claim for damages because the 1-year limitations period under the Tort Immunity Act has expired**

Even if the INMWA implies a private right of action, Plaintiff cannot bring a claim for damages under it because the statute of limitations has passed. Plaintiff fails to allege any improper conduct after October 2015, when she filed her EEOC Charge. ¶¶6, 73. Plaintiff's claim under the INMWA falls under the auspices of the Illinois Tort Immunity Act ("TIA") which provides a 1 year statute of limitations. Plaintiff's suit was filed suit February 14, 2017, well after the 1 year limitations period.

The TIA provides that, in general, civil actions against a municipality must be "commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 5/8-101. There are some exceptions to this rule, including patient care cases, 745 ILCS 5/8-101(b), and the causes of action specifically enumerated under 745 ILCS 10/2-101. *See Collins v. Town of Normal,* 2011 IL App (4th) 200694 at ¶¶20-21 (2011) (workers compensation retaliatory discharge is not limited by §8-101 of the TIA, because the Workers Compensation Act is specifically listed in § 2-101). However, the INMWA does not fall under either category. Therefore, Plaintiff cannot bring a claim under the INMWA and Count VIII should be dismissed.

## CONCLUSION

For the reasons stated herein, the City requests that the Court dismiss Counts VI and VIII of Plaintiff's Complaint in their entirety, partially dismiss Counts I, II, III, and V as discussed above, along with any associated factual allegations not relevant to the remaining claims, and grant any other relief this Court deems appropriate.

Dated: May 19, 2017                                   Respectfully submitted,

                                                      EDWARD N. SISKEL
                                                      Corporation Counsel of the City of Chicago

30 N. La Salle St., Suite 1020
Chicago, Illinois 60602                  By:    _/s/ Daniel W. Myerson_
(312) 744-4939/6922                             DANIEL W. MYERSON
                                                RENA M. HONOROW
                                                Assistants Corporation Counsel

15