IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH SPRIESCH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, a municipal ) <br> Corporation, ) <br> ) <br> Defendant. ) | Case No. 17-cv-01952 <br><br> Judge Sara L. Ellis <br><br> Magistrate Judge M. David Weisman |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Sarah Spriesch (formerly known as Sarah Murphy) is a Paramedic In Charge in the Chicago Fire Department ("CFD"), where she has been subjected to a pattern of discrimination and retaliation based on her pregnancy and pregnancy-related conditions. As the Complaint alleges, Defendant, the City of Chicago, forced Ms. Spriesch to go on leave and repeatedly continued her leave because she was pregnant. Upon Ms. Spriesch's return to work, Defendant treated her involuntary pregnancy leave less favorably than it treats leave for other purposes. Defendant also denied Ms. Spriesch reasonable accommodations for expressing breast milk ("pumping"). Ms. Spriesch's action includes, among others, claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*; and the Illinois Nursing Mothers in the Workplace Act ("INMWA"), 820 ILCS 260/1 *et seq*.

In its Motion to Dismiss Counts VI and VIII and Partially Dismiss Counts I, II, III, and V of Plaintiff's Complaint, Defendant does not dispute that Ms. Spriesch has stated claims of disparate treatment under Title VII (Count V) and discrimination under the IHRA (Counts I, II, and III) based on Defendant's denials of pumping accommodations. Instead, Defendant asks the

Court to "partially dismiss" these counts to the extent they grow out of Ms. Spriesch's forced pregnancy leave. However, a "motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original); *see also In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, 159 F. Supp. 3d 898, 923-24 (N.D. Ill. 2016). For this reason alone, this Court must deny Defendant's motion relating to Counts I, II, III, and V. In any event, however, contrary to Defendant's contentions, Ms. Spriesch has stated timely claims based on Defendant's adverse employment actions relating to her pregnancy leave.

Nor can Defendant prevail with its remaining arguments. The allegations of the Complaint support a disparate impact claim based on Defendant's practices, which stack the deck against pregnant and lactating employees. They also support a private action under the INMWA. Ms. Spriesch has provided fair notice of her claims based on allegations that allow the Court to determine that legal liability is plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Taking all well-pleaded facts as true, and drawing all inferences in favor of the plaintiff, as is required at this stage, *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014), this Court should deny Defendant's motion and permit Ms. Spriesch to proceed with her claims.

## STATEMENT OF FACTS

Ms. Spriesch has worked at CFD since 2012. Compl., Doc. No. 1, ¶ 9. Consistent with its policy and practices, Defendant placed Ms. Spriesch on leave in 2014 when it learned she was pregnant, and continued the leave for the duration of her pregnancy. *Id.* ¶¶ 11-14, 20. Defendant required monthly check-ins with CFD Medical Division, at which it confirmed that Ms. Spriesch was still pregnant and, on that basis, repeatedly extended her leave. *Id.* ¶¶ 16-17. With certain

minor exceptions, Defendant's policy confined Ms. Spriesch to her home for the duration of her leave, subjecting her to the risk of discipline if she failed to comply. *Id.* ¶¶ 15, 19. While on leave, she received base pay but lost opportunities for additional pay, such as overtime and drivers' pay, as well as furlough time. She also lost her ambulance assignment. *Id.* ¶ 18.

On April 8, 2015, when Ms. Spriesch returned to work, Defendant informed her that it would treat her leave as one for off-duty injury or illness, consistent with its practice of treating pregnancy leave less favorably than leave for on-the-job injury. *Id.* ¶¶ 24-25, 27. This used nearly all of Ms. Spriesch's off-duty injury leave time, which she had to earn back to be protected in the event that she suffered an actual off-duty injury or illness. *Id.* ¶¶ 25-28. On that day, Defendant also repeatedly denied Ms. Spriesch's requests for breaks to pump, *id.* ¶¶ 35-61, causing her increasing pain and discomfort as the day wore on and her breasts became engorged and began to leak. *Id.* ¶¶ 53-54, 62. Only after hours passed did Defendant allow Ms. Spriesch to take a lunch break – the only break she was allowed to take that day – during which she pumped in her car. *Id.* ¶¶ 35-61. CFD staff later apologized for Defendant's April 8th conduct, acknowledging that Defendant was required to offer private, non-bathroom space for pumping, but stating, "I don't know how that's going to happen." *Id.* ¶¶ 64-66.

Because Ms. Spriesch had lost her ambulance assignment and was in the relief pool, she could be detailed to a different firehouse every shift. *Id.* ¶ 70. CFD staff exercised discretion to consider other personal needs in making assignments from the relief pool, *id.* ¶ 75, but did not consider Ms. Spriesch's lactation needs. *Id.* ¶¶ 70-74. For six months, Defendant regularly detailed Ms. Spriesch to firehouses that did not allow her access to an adequate space to pump, requiring her to pump in a restroom or the back of an ambulance. *Id.* ¶¶ 70-74, 86-87.

**ARGUMENT**

I. **PLAINTIFF STATES A TITLE VII DISPARATE TREATMENT CLAIM.**

As shown above, Defendant's request for partial dismissal is contrary to precedent and must be rejected. This Court should also deny Defendant's motion because Ms. Spriesch alleges timely acts of discrimination relating to her pregnancy leave that caused her injury.

A. **Plaintiff filed a timely charge of discrimination challenging adverse employment actions relating to her involuntary pregnancy leave.**

Defendant's practice of requiring leave for pregnant employees violates the established principle that "employers may not require a pregnant woman to stop working at any time during her pregnancy unless she is unable to do her work." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 205 (1991). Defendant is correct that it first placed Ms. Spriesch on leave in June of 2014, outside the statutory period. However, as Defendant concedes, each discrete discriminatory act starts a new clock, and any such acts after December 9, 2014 are within the relevant time frame. Def. Mot., Doc. No. 16, 4 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111-13 (2002)).[1]

The Complaint alleges such timely acts. Defendant's policy required an assessment of Ms. Spriesch's condition and a decision whether to keep her on leave at every monthly check-in. Compl. ¶ 16, Ex. 3 at 6. At each check-in – including between December 9, 2014 and February 4, 2015, when Ms. Spriesch gave birth – Defendant confirmed that she was pregnant and then extended her leave solely on that basis. *Id*. ¶¶ 16-17. Each such intentionally discriminatory act was a fresh violation. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007).

---

[1] Defendant's requests to strike all allegations relating to Ms. Spriesch's leave for pregnancy and childbirth, Def. Mot. 6, 10, are improper. Allegations relating to Defendant's unlawful conduct before December 9, 2014 provide context and support claims based on conduct within the statutory period. *See Morgan*, 536 U.S. at 113.

4

Defendant's cases holding that a continuing-violation theory cannot be used to challenge an ongoing failure to remedy past discrimination are inapposite. *See, e.g.*, *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239-40 (7th Cir. 2004). Defendant did not assess each month whether to remedy its past decision to place Ms. Spriesch on leave, but rather whether a new month of leave was warranted. Compl. Ex. 3 at 6.

Defendant also suggests that the check-ins merely implemented its initial decision to place Ms. Spriesch on leave, and were not motivated by discriminatory intent. Def. Mot. 4-5. This is a factual question that is not resolved at this phase. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012). Moreover, even Defendant's cases acknowledge that such discrete, predictable acts, repeated within the statutory period to implement a past discriminatory decision, may give rise to a timely claim. *See, e.g.*, *Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir. 1997).

Ms. Spriesch also states a disparate treatment claim based on Defendant's decision to treat her leave less favorably than on-duty injury leave, which Defendant communicated to her within the statutory period. Compl. ¶¶ 23-25, 27. Under the notice rule, the limitations period begins when an employer communicates an unlawful decision to the employee. *See, e.g.*, *Ricks*, 449 U.S. at 257-58; *Stepney*, 392 F.3d at 240. Defendant had no policy stating how pregnancy leave would be treated, and Ms. Spriesch thus had no notice prior to April 8, 2015. Compl. ¶ 24. While Defendant seems to contend that it decided to treat Ms. Spriesch's leave as off-duty injury when it first placed her on leave, Def. Mot. 7, the limitations period begins not when the employer makes its decision, but when it gives "unequivocal" notice to the employee. *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 640-41 (7th Cir. 2004). Defendant does not claim it gave notice earlier – nor would such a factual question matter at this stage. *Id.*

5

**B. Plaintiff was injured by Defendant's materially adverse employment actions.**

Defendant's argument that Ms. Spriesch suffered no injury similarly fails. Def. Mot. 5-6, 8-10. First, the 308 lost leave days drastically limited the leave days that would be available to Ms. Spriesch if she were to suffer an actual off-duty injury or illness. Compl. ¶¶ 23-28. Such diminishment in fringe benefits is an actionable, materially adverse employment action under Title VII. *See Nichols v. SIU-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007); *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). Defendant makes much of the fact that, at this time – nearly two years after filing her charge – Ms. Spriesch has earned back all of her off-duty leave days. Def. Mot. 8-9. But the fact that an employer eventually restores an employee's benefits does not negate her right to pursue a Title VII claim. *See Phelan v. Cook County*, 463 F.3d 773, 780 (7th Cir. 2006), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc*. 834 F.3d 760 (7th Cir. 2016). For more than a year after returning from leave, Ms. Spriesch feared that even minor off-duty injury or illness, or an unintended pregnancy, would quickly exhaust her remaining paid leave time, and that she would be placed on unpaid leave or fired as a result.[2]

Defendant also suggests that Ms. Spriesch filed her charge too soon and that she should have waited to see if she would run out of paid leave before doing so. Def. Mot. 8. To the contrary, an actionable violation occurs when a plaintiff is told of a wrongful decision regarding the classification of her absence from work; she may not wait until she runs out of her allotted absences – and is fired – before bringing a claim. *See Barrett v. Illinois Dep't. of Corr.*, 803 F.3d 893, 898-99 (7th Cir. 2015).

---

[2] Defendant calculates that by June 4, 2016, Ms. Spriesch had earned back enough days that she did not need to fear running out of leave time if she suffered an actual off-duty injury or illness. Def. Mot. 8-9. This, of course, is a factual question, but even assuming this were true, it means that for more than a year (from April 8, 2015 to June 4, 2016), Ms. Spriesch had limited access to off-duty injury leave days and justifiably feared exhausting them if she suffered an actual off-duty injury or illness.

Defendant is also wrong to claim that Ms. Spriesch suffered no injury because she received base pay during her leave. Def. Mot. 5-6, 8. The forced leave caused her to lose additional pay and benefits, including overtime opportunities and furlough time, and her ambulance assignment. Compl. ¶ 18. Denial of opportunities to earn overtime pay can constitute an adverse employment action, *Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007), as can loss of benefits or status. *See, e.g.*, *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 407 (7th Cir. 2010); *Flanagan v. Reno*, 101 F. Supp. 2d 1022, 1026 n.2 (N.D. Ill. 2000). Defendant's reliance on *Nichols* is misplaced. Def. Mot. 6. That case involved administrative leave for police officers under investigation for misconduct; the leave was not limited in length, caused no alleged loss of benefits, and could not have been used for other purposes. *See Nichols*, 510 F.3d at 786.

Finally, with only minor exceptions, Defendant required Ms. Spriesch to remain confined to her home during her forced leave. Compl. ¶¶ 15, 19. Ms. Spriesch is a healthy person who had a healthy pregnancy and was not only repeatedly denied the opportunity to work but was prohibited from engaging in activities with her children and other family members because of Defendant's discriminatory conduct. Title VII does not limit adverse employment actions to strictly monetary harms. *Collins v. Illinois*, 830 F.2d 692, 703 (7th Cir. 1987). Contrary to Defendant's assertions, Def. Mot. 5-6, Ms. Spriesch clearly alleges hardships "more disruptive than a mere inconvenience." *Nichols*, 510 F.3d at 780.[3]

---

[3] Defendant's contention that Ms. Spriesch lacks standing, Def. Mot. 9, is absurd. A plaintiff need not allege financial injury to have standing, and may rely on intangible, even difficult-to-measure, harms. *See, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). Indeed, the standard for Article III injury is lower than for Title VII adverse action. *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 176–77 (2011). Ms. Spriesch clearly has standing to pursue her Title VII claims.

7

## II. PLAINTIFF STATES CLAIMS FOR DISCRIMINATION UNDER THE IHRA.

As with disparate treatment, Defendant's motion to dismiss Counts I, II and III – Ms. Spriesch's IHRA claims – fails because, as discussed above, Defendant cannot seek partial dismissal of a claim. In any case, Ms. Spriesch states timely IHRA claims based on injury she suffered upon her return from pregnancy leave.

The IHRA expressly prohibits employers from treating pregnancy leave less favorably than leave for on-the-job injury. 775 ILCS 5/2-102(I) (requiring employers to treat workers affected by pregnancy and childbirth "the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, *regardless of the source of the inability to work* or employment classification or status") (emphasis added). As Defendant concedes, April 8, 2015, the date Defendant notified Ms. Spriesch that it would treat her leave as an off-duty injury – and less favorably than it treats on-duty injury – is within the 180-day IHRA statutory period. Def. Mot. 4. Ms. Spriesch's IHRA claims based on the unequal treatment of her leave are thus timely.

Defendant attempts to confuse the issue by pointing to the January 1, 2015 effective date of Public Act 98-1050, which amended the IHRA to clarify that unequal treatment based on pregnancy was prohibited regardless of the source of the inability to work. Def. Mot. 6-7. However, as Defendant is undoubtedly aware, both state and federal law prohibited pregnancy discrimination prior to 2015. *See, e.g.*, *Hall v. Nalco Co.*, 534 F.3d 644, 647 (7th Cir. 2008). The amendment to the IHRA was intended as a clarification of existing state law. *See* 98th Ill. Gen. Assem., House Proceedings, April 10, 2014, at 113 (statement of Rep. Flowers) (explaining that court decisions had inappropriately "made the distinction about women injured in the workplace or injured on the job" and that the amendments were needed to "restore our original intent"). As of January 1, 2015, Defendant was clearly on notice that its pregnancy leave practices were

8

unlawful, yet it committed a fresh violation by notifying Ms. Spriesch on April 8, 2015 that her entire leave for pregnancy and childbirth would be treated as an off-duty injury.

Nor is there any basis for Defendant's argument that its April 2015 act was merely an after-effect of policies adopted prior to P.A. 98-1050. Def. Mot. 7. The U.S. Supreme Court rejected precisely this rationalization in *Bazemore v. Friday*, 478 U.S. 385, 395-96 (1986), in which it held that Title VII permitted a challenge to ongoing racially discriminatory pay practices that began before the statute's effective date. *See also AT & T Corp. v. Hulteen*, 556 U.S. 701, 715 (2009) (stating in dicta that *Bazemore*'s reasoning would apply if an employer continued to treat pregnancy leave unequally after the Pregnancy Discrimination Act was enacted).

### III. PLAINTIFF STATES A TITLE VII DISPARATE IMPACT CLAIM.

Ms. Spriesch's Complaint draws on her personal experience to allege the adverse impact of Defendant's practices on nearly all pregnant or lactating CFD employees. She identifies specific employment practices, alleges a causal link between these practices and a disparate impact on pregnant or lactating employees, and gives Defendant fair notice of the claim. At the pleading stage, this is all that is required to state a claim for disparate impact. *See, e.g.*, *McQueen v. City of Chicago*, 803 F. Supp. 2d 892, 907 (N.D. Ill. 2011).

### A. Plaintiff states a disparate impact claim based on Defendant's pregnancy leave practices.

As Defendant concedes, Ms. Spriesch has identified leave practices that adversely affect pregnant employees, Def. Mot. 12, and as Ms. Spriesch has alleged a causal link between these practices and a harmful impact on pregnant employees, Compl. ¶¶ 20, 26, she states a disparate impact claim. Defendant appears to seek dismissal of this portion of Ms. Spriesch's disparate impact claim with the same legal arguments it used for "partial dismissal" of the disparate treatment claim. *See* Def. Mot. 3-10. These arguments fare no better here. Moreover, Defendant

9

misstates the law with its assertion that Ms. Spriesch cannot bring a timely disparate impact claim based on Defendant's continued use of its leave practices within the limitations period. Def. Mot. 5. As the U.S. Supreme Court has made clear, a claim accrues each time an employer applies a practice that causes an unlawful disparate impact, even if the employer first adopted the practice long ago. *See Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 214-15 (2010). A timely disparate impact claim therefore need only allege that the defendant last used the challenged practice within the limitations period. *See, e.g.*, *Howe v. City of Akron*, 801 F.3d 718, 745-46 (6th Cir. 2015); *Chicago Police Sergeants Ass'n v. City of Chicago*, No. 08-cv-4214, 2011 WL 2637203, *4 (N.D. Ill. July 6, 2011). As shown above, Ms. Spriesch has alleged timely uses of Defendant's pregnancy leave practices, including its decisions to extend her leave after December 9, 2014 and the notice on April 8, 2015 that her pregnancy leave was treated as off-duty injury leave time.

**B. Plaintiff states a disparate impact claim based on Defendant's method of detailing shift assignments.**

Ms. Spriesch also brings a disparate impact challenge to Defendant's practice of granting CFD staff broad discretion to allocate shift assignments, including nearly unfettered discretion to place paramedics in the relief pool at a variety of firehouses – many of which do not offer access to adequate space to pump. Defendant complains that Ms. Spriesch has not produced a written shift assignment policy, Def. Mot. 12, but a disparate impact claim need not identify a formal or written policy. *See, e.g.*, *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 982-83 (1988). Informal, discretionary practices may create systematic bias as a result of prejudices or stereotypes, whether conscious or unconscious, on the part of the decision-maker. *Id.* at 990-91. *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011). Defendant simply cannot escape scrutiny of its unlawful practices by claiming that it never wrote them down.

Nor can Defendant defeat Ms. Spriesch's disparate impact claim by complaining that she has not identified a "facially neutral policy." Def. Mot. 13. The fact that a defendant intentionally used a practice to discriminate does not foreclose a disparate impact challenge to the practice. *Adams v. City of Indianapolis*, 742 F.3d 720, 731-32 (7th Cir. 2014); *see also Lucas v. Gold Standard Baking, Inc.*, No. 13 C 1524, 2014 WL 518000, at *3 (N.D. Ill. Feb. 10, 2014).

In addition, contrary to Defendant's argument, Ms. Spriesch has alleged a causal link between Defendant's practice of detailing shift assignments and the harm it causes lactating female CFD employees. A plaintiff may plead such a link by offering some basic factual allegations to "move the disparate-impact claims over the plausibility threshold," relying on a variety of methods and comparisons to do so. *Adams*, 742 F.3d at 733. For example, Ms. Spriesch has alleged that many CFD firehouses do not offer adequate access to private, non-bathroom space for expressing breast milk, Compl. ¶ 70, and that senior CFD staff acknowledged that Ms. Spriesch would likely be detailed to firehouses that did not accommodate her need to pump – a predictable result of Defendant's shift assignment practices. *Id.* ¶¶ 66-67.

A plaintiff may also allege a causal link by identifying examples of employees outside the protected class who have been treated more favorably than those in it. *See Anfeldt v. United Parcel Serv., Inc.*, No. 15 C 10401, 2017 WL 839486, at *2 n.1 (N.D. Ill. Mar. 3, 2017); *McQueen*, 803 F. Supp. 2d at 906–07. Ms. Spriesch has, accordingly, identified groups of non-lactating employees who were accommodated by Defendant's assignment practices, namely: employees who wish to be closer to a sick family member; employees who do not get along with certain other employees; employees who have disabilities or certain other medical conditions; and employees who agree to a "Last Chance Agreement" after testing positive for drugs or alcohol. Compl. ¶ 75. Ms. Spriesch compares this to her own experience of being regularly

11

detailed to locations where she had to pump in a dirty restroom or in the back of an ambulance. Compl. ¶¶ 70-75.

Similarly, Defendant is wrong to question Ms. Spriesch's reliance on personal experience and observations as opposed to "statistical data [or] other evidence." Def. Mot. 12. Allegations based on the plaintiff's personal experience or observations are all that is needed at the pleading stage. *See, e.g.*, *Shirley v. Staffing Network Holdings, LLC*, No. 16 C 6279, 2016 WL 6599951, at *4 (N.D. Ill. Nov. 8, 2016); *Lucas v. Ferrara Candy Co.*, No. 13 C 1525, 2014 WL 3611130, at *3-4 (N.D. Ill. July 22, 2004). A complaint need not produce statistical or other evidence of a prima facie case. *See, e.g.*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002); *Murdock-Alexander v. Tempsnow Employment*, No. 16-CV-5182, 2016 WL 6833961, at *7–8 (N.D. Ill. Nov. 21, 2016). Having stated a claim, Ms. Spriesch is entitled to gather more data during discovery to prove it. *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998).

## IV. PLAINTIFF STATES A CLAIM UNDER THE ILLINOIS NURSING MOTHERS IN THE WORKPLACE ACT.

Defendant's failure to provide breaks and a private, non-restroom space to express breast milk clearly violates the INMWA. Defendant nevertheless seeks dismissal, arguing that there is no private right of action under the statute and that the Tort Immunity Act bars Ms. Spriesch's claim. Defendant is wrong on both counts.

### A. An implied right of action exists under Illinois' Nursing Mothers in the Workplace Act.

Illinois law allows an implied right of action under a statute if: "(1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d

1115, 1117-18 (Ill. 1999). Defendant does not dispute that Ms. Spriesch's claim satisfies the first three parts of the *Fisher* test, arguing only that the claim fails the last prong. Def. Mot. 13-14. However, as the INMWA contains no remedies, penalties, or other mechanism for enforcement, an implied right of action is necessary to effectuate the legislative purpose and enforce the law. *See Rodgers v. St. Mary's Hosp. of Decatur*, 597 N.E.2d 616, 619-20 (Ill. 1992). Illinois courts liberally imply such rights "where there exists a clear need to effectuate the purpose of an act," *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 432 N.E.2d 849, 853 (Ill. 1982), and routinely do so where, as here, the threat of individual liability offers the most efficient method of enforcement. *See Rodgers*, 597 N.E.2d at 619. Absent an implied right of action, here, "the statute would be ineffective, as a practical matter." *Fisher*, 722 N.E.2d at 1120.

Defendant contends that a right of action under the INMWA is not necessary because the IHRA offers an adequate remedy for INMWA violations. Def. Mot. 13-14.[4] But this misrepresents the scope of the IHRA, which is limited to "civil rights violations" enumerated in the Act, and provides the *exclusive* remedy, through its administrative processes, for such claims. *See Blount v. Stroud*, 904 N.E.2d 1, 10, 16-17 (Ill. 2009). Courts thus reject efforts like Defendant's to interpret the IHRA to cover other statutory or common-law claims, because doing so would foreclose plaintiffs' ability to pursue those other claims entirely. *See, e.g.*, *id.* at 7-11 (finding that the IHRA did not preclude tort claim of retaliatory discharge); *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23-24 (Ill. 1997) (same for tort claims of assault, battery, and false imprisonment); *Torres v. Merck Sharp & Dohme Corp.*, No. 16 C 08065, 2017 WL 2480707, at *4-5 (N.D. Ill. June 8, 2017) (same for retaliation claim under the Illinois Whistleblower Act). The IHRA thus does not cover claims that arise out of legal duties outside the IHRA, such as the

---

[4] Defendant also contends "other available laws" offer a remedy, but fails to identify such laws.

13

INMWA. *See, e.g.*, *Mendez v. Perla Dental*, 646 F.3d 420, 422 (7th Cir. 2011); *Maksimovic*, 687 N.E.2d at 23. Defendant's reliance on *Bonnstetter v. City of Chicago*, No. 13 C 4834, 2014 WL 3687539 (N.D. Ill. July 24, 2014), is misplaced. That case declined to find a separate private right of action under the Illinois Constitution for *civil rights violations*, because the IHRA covers such claims. *See id.* at *6. The IHRA offers no such remedy for INMWA violations.

Furthermore, contrary to Defendant's contention, Def. Mot. 13, the INMWA and the IHRA establish different legal duties to advance different purposes. Under the IHRA, an employer's duty to provide accommodations only accrues after a request is made by the employee, who may be required to support her request with certain documentation from a health care provider. 775 ILCS 5/2-102(J)(1). Such a request initiates the required exchange between both parties to identify reasonable accommodations. *Id.*; *see also* 98th Ill. Gen. Assem., Senate Proceedings, May 20, 2014, at 116 (statement of Sen. Hutchinson) ("We actually added clarifying language to the bill to make sure that . . . [i]f the employee comes and says, 'This is what I need to have; this would be a reasonable accommodation for me', that's what sets this – the language of this bill off.").

By contrast, the INMWA is intended to promote breastfeeding among working mothers. *See* 92nd Ill. Gen. Assem., House Proceedings, April 19, 2001, at 14-15 (statement of Rep. Erwin) ("We know from medical and science research that women who breast-feed are healthier themselves and have healthier children. . . . [We are] trying to have healthy children in encouraging breast-feeding"). In keeping with that purpose, the INMWA specifically requires employers to make reasonable efforts to provide breaks and a private, non-bathroom space for expressing breast milk, in close proximity to the work area, to any employee who needs to express breast milk. 820 ILCS 260/10, 15. Presumably, an employee must notify her employer

that she has such a need, but the INMWA does not require her to make a specific request, offer documentation, or discuss alternative accommodations. *Id.*

This may be a subtle distinction, but it is an important one, particularly in light of Defendant's Answer to Ms. Spriesch's Complaint, Doc. No. 15, in which it admits that Ms. Spriesch gave notice of her need to pump, but denies that she thereby requested accommodations under the IHRA. *Compare* Answer ¶ 48 (admitting "Plaintiff did inform Instructor Scott that she needed to pump" on April 8, 2015) *with id.* ¶ 81 (denying Ms. Spriesch "made accommodation requests" that day). *Compare also id.* ¶ 66 ("The City admits Plaintiff inquired about pumping accommodations" with senior CFD staff) *with id.* ¶ 29 (claiming "Plaintiff did not properly seek an accommodation" to pump at work). While Ms. Spriesch disputes Defendant's claim that she did not appropriately request accommodations for purposes of the IHRA (a factual question that cannot be resolved here), Defendant does not even attempt to argue that it made any effort to provide her with a private, non-bathroom space to pump, as required by the INMWA. *See, e.g.*, *id.* ¶¶ 70-72. An implied right of action is necessary to remedy this clear violation.

**B. The Illinois Tort Immunity Act does not apply to Plaintiff's INMWA claim.**

Defendant's use of the Tort Immunity Act ("TIA"), 745 ILCS 10/1-101 *et seq.*, to try to bar Ms. Spriesch's INMWA claim is similarly misplaced, as "[n]othing in [the TIA] affects the right to obtain relief other than damages." 745 ILCS 10/2-101. Ms. Spriesch seeks a declaratory judgment that Defendant has violated the INMWA and a permanent injunction to address those violations. Compl. Prayer for Relief. The TIA does not apply to claims seeking such relief. *See Raintree Homes, Inc. v. Vill. of Long Grove*, 807 N.E.2d 439, 443-44 (Ill. 2004); *Anderson v. Sutter*, 458 N.E.2d 39, 43 (Ill. App. Ct. 2d 1983). To the extent that Ms. Spriesch seeks damages, she does so based on other claims under laws to which the TIA does not apply. *See, e.g.*, *Am. Islamic Ctr. v. City of Des Plaines*, 32 F. Supp. 3d 910, 916-17 (N.D. Ill. 2014).

15

## CONCLUSION

For the reasons set forth herein, Plaintiff requests that this Court deny Defendant's Motion to Dismiss Counts VI and VIII and Partially Dismiss Counts I, II, III, and V of Plaintiff's Complaint.


DATED: July 6, 2017

By: /s/ Amy Meek
*One of the attorneys for Plaintiff*

Lorie Chaiten
Amy Meek
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave. Ste. 600
Chicago, IL 60601
312-201-9740
lchaiten@aclu-il.org
ameek@aclu-il.org

Donna M. Welch
Ashley N. Kirkwood
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654
312-862-2000
donna.welch@kirkland.com
ashley.kirkwood@kirkland.com

## **CERTIFICATE OF SERVICE**

I, Amy Meek, an attorney, hereby certify that I caused true and correct copies of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS to be served upon all counsel of record via the ECF system of the U.S. District Court, Northern District of Illinois, Eastern Division, on this 6th day of July, 2017.

/s/ Amy Meek

Amy Meek
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave. Ste. 600
Chicago, IL 60601
312-201-9740
ameek@aclu-il.org